**BURSOR & FISHER, P.A.**
Joel D. Smith (State Bar No. 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: jsmith@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

MARGARET PRZYWARA individually and on behalf of all others similarly situated,

Plaintiff,

v.

FIVE9, INC.,

Defendant.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Margaret Przywara ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This is a class action suit brought against Defendant Five9, Inc. ("Defendant" or "Five9") for wiretapping the electronic communications of visitors to various pregnancy center and pregnancy resource websites, including the Women's Center West (womenscenterwest.com) and Option Line (optionline.org) websites (the "Websites").[1] These Websites employ Five9, a third party, to provide chat functions on the Websites. The electronic communications made in the chat function are routed through the servers of and are used by Five9 to, among other things, secretly observe, record, and analyze Website visitors' electronic communications in real time, including the entry of Personally Identifiable Information ("PII") and Protected Health Information ("PHI"). By doing so, Defendant has violated Florida's Security of Communications Act, Fla. Stat. § 934.01, *et seq.* ("The Wiretap Statute") and the California Invasion of Privacy Act, Cal. Penal Code §§ 631 and 632 ("CIPA").

2. Plaintiff brings this action on behalf of all persons whose electronic communications were intercepted or recorded by Five9 on any Website via the Option Line Chat, a version of Defendant's API product, described herein.

[1] The full list of websites currently known to Plaintiff are as follows: womenscenterwest.com, optionline.org, fanninpregnancy.org, daviepregnancycare.org, deltapregnancycenter.org, birthchoicedallas.org, gvdoorofhope.org, boernepregnancy.org, blackhillspregnancycenter.com, elcentropregnancy.org, scaredandpregnant.org, helppregnancycenter.com, and bvlifechoices.com. Each of these websites uses Defendant's Option Line chat function, a version of Defendant's API described herein, which makes the experience of any person who uses the chat function for any of these websites substantially similar. Plaintiff believes discovery will demonstrate that additional websites are within the scope of this lawsuit. Accordingly, our client and the class she represents reserves the right to amend her complaint to include additional websites to more accurately allege the scope of Defendant's wiretapping.

## THE PARTIES

3. Plaintiff Margaret Przywara is a Florida resident and citizen who lives in Poinciana, Florida. Ms. Przywara is currently pregnant and accessed the website for Women's Center West, a pregnancy resource center located in Maryland, on or around March 26, 2023. Ms. Przywara was in Florida when she visited the Website. During each website visit, Ms. Przywara's electronic communications (*i.e.*, the words she typed in the chat function)—including communications related to her pregnancy among other PII and PHI—were intercepted in real time and were disclosed to Defendant through the wiretap. Ms. Przywara was unaware at the time that her electronic communications, including the information described above, were being intercepted in real-time and would be disclosed to Five9, nor did Ms. Przywara provide her prior consent to the same. Ms. Przywara was unaware at the time that her electronic communications were being intercepted in real-time and would be disclosed to Five9. Ms. Przywara was not asked for, nor did she provide her prior consent to, disclosure of her chats to Five9.

4. Defendant Five9, Inc. is a Delaware company with its principal place of business at 3001 Bishop Drive, Suite 350, San Ramon, CA 94583.

5. Five9 is a marketing software-as-a-service ("SaaS") company, primarily offering Customer Experience ("CX") software and applications focused on sales, customer service, marketing, automation, analytics, and application development.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from at least one Defendant.

7. This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in California.

8. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because Defendant resides in this District.

## STATEMENT OF FACTS

### I. Overview Of The Wiretaps

9. Five9 offers for sale a suite of software services called "Contact Center Solution" which is a combination of a basic customer service chat function and backend analytics tools.

10. The service can be used with any website, as it is an Application Programming Interface (API) that can be "plugged into" an existing website. The API is run from Five9 web servers but allows for chat functionality on the contracting company's website. A company must purchase a license from Five9 to use the Chat feature on their website.

11. In short, Five9 runs the Chat service from its servers, but customers interact with the Chat service on a separate company's website. Women's Center West and Option Line are examples of these companies. Thus, whenever a chat message is sent from a website visitor to a customer service agent, it is first routed through a Five9 server.

12. The API service needs to run on Five9 servers because Five9 analyzes the customer-support agent interactions in real time to create live transcripts of communications as they occur, among other services.

13. The Five9 website notes that the Five9 service will "guide and assist agents during live interactions" and "provide[s] real-time analytics and recordings" of those interactions.

14. Thus, through the API service, Five9 is able to record the other electronic communications of visitors to websites where the code is installed, including the content of all chat communications between a website and visitors to the website. It also allows Defendant to track the amount of time spent on the website, geographic location of the visitor, and other information described above.

15. One version of Five9's API product is a chat feature with the words "Option Line" at the top of the chat box. This appears to refer to the Option Line website (optionline.org), a website for finding pregnancy resources. This "Option Line Chat" appears on websites for pregnancy centers across the country and other websites for pregnancy resources. Unless a person happens upon the Option Line Website, that person would not know that the Option Line Chat is connected to another website. For example, Plaintiff did not know about Option Line at the time of her visiting

the Women's Center West website. She only became aware of the prevalence of the Option Line Chat after her counsel's investigation into Five9's API.

16. Regardless of whether a website user believed they were chatting with an agent from the pregnancy center or an agent from Option Line, they did not consent to having their conversation wiretapped by Five9 and did not know Five9 was secretly recording their communications, including communications related to their pregnancies.

17. Examples of these transmissions of data can be seen in the images below. As to Women's Center West, as a chat message is sent to a customer service representative (*picture right*), network traffic simultaneously flows through a Five9 web server directly to Five9 (*picture lower left*), as indicated by the "request URL" and "referrer" being "app-atl.five9.com" (meaning the messages are being sent to Five9):




18. Similarly, as to Option Line, as chat messages are exchanged between the website visitor and an Option Line representative (*picture right*), network traffic simultaneously flows through a Five9 web server directly to Five9 (*picture left*), as indicated by the "request URL" and "referrer" being "app.five9.com" (meaning the messages are being sent to Five9):

**Request URL:** https://app.five9.com/five9_clients/consoles.v13.0.95/ChatConsole/css/chat.css?_=1666800461193

19. Thus, through the API chat function, Five9 directly receives the electronic communications of visitors to various websites, including Women's Center West and Option Line, in real time.

20. Accordingly, as currently deployed on the Websites, Five9's API constitutes wiretapping.

21. When Five9's API is used on a website conversation, it is not like a tape recorder or a "tool" used by one party to record the other. Instead, Five9's API involves Five9—a separate and distinct third-party entity from the parties to the conversation—using Five9's API to eavesdrop upon, record, extra data from, and analyze a conversation to which they are not a party. This is because Five9 itself is collecting the content of any conversation. That data is then analyzed by Five9 before being provided to any entity that was a party to the conversation.

**II. Defendant Wiretapped Plaintiff's Electronic Communications**

22. Plaintiff visited the Women's Center West website as set forth above. During that visit, Plaintiff used the Option Line Chat function to speak with live agents on the Website.

23. During that visit, Five9, through the API function, intercepted the content of Plaintiff's electronic communications with the Women's Center West customer service agent in real time. The Five9 wiretap also captured the date and time of those visits, the duration of the visits, Plaintiff' IP address, her location at the time of the visits, her browser type, and the operating system of her device.

24. Five9's recording of electronic communications begins the moment a user accesses or interacts with the Chat feature on the Website, prior to a user consenting to any sort of privacy policy or the wiretaps generally. Nor are users told, prior to being wiretapped, that their electronic communications are being simultaneously directed to Five9, as opposed to just the Website customer service agent.

25. Users, including Plaintiff, are thus not on notice of any wiretapping when they begin a Chat interaction, nor do they provide their prior consent to the same.

26. When many users, including Plaintiff, access the Option Line Chat function on Women's Center West's website, they speak with a customer service agent about sensitive medical information, such as information about their pregnancy or reproductive health. Five9's API function captures these electronic communications throughout the interaction.

27. Plaintiff was in Florida when she accessed the Women's Center West website through her internet browser. Upon having her browser access the website in Florida, Five9's API function instructed the browser in Florida to send electronic communications directly to it from the Florida location of the browser to Five9's servers, which are located in California.

28. Five9 has access to class members' chat interactions with the Websites because Five9 contracts with the various Website owners to provide the Option Line Chat service.

**CLASS ACTION ALLEGATIONS**

29. Plaintiff seeks to represent a class of all United States residents who used the Option Line Chat version of Five9's API function on any Website, and whose electronic communications

were intercepted or recorded by Five9 (the "Nationwide Class").

30. Plaintiff also seeks to represent a class of all Florida residents who used the Option Line Chat version of Five9's API function on any Website while in Florida, and whose electronic communications were intercepted or recorded by Five9 (the "Florida Subclass").

31. Plaintiff reserves the right to modify the foregoing Class and Subclass definitions as appropriate based on further investigation and discovery obtained in the case.

32. Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class and Subclass number in the thousands. The precise number of Class and Subclass Members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class and Subclass Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

33. Common questions of law and fact exist as to all Class and Subclass Members and predominate over questions affecting only individual Class and Subclass Members. Common legal and factual questions include, but are not limited to, whether Defendant has violated the Wiretap Statute; whether Defendant violated the CIPA; and whether Class and Subclass Members are entitled to actual and/or statutory damages for the aforementioned violations.

34. The claims of the named Plaintiff are typical of the claims of the Class and Subclass because the named Plaintiff, like all other class members, visited one of the Websites and had her electronic communications intercepted and disclosed to Five9 through the use of Five9's API function.

35. Plaintiff is an adequate representative of the Class and Subclass because her interests do not conflict with the interests of the Class and Subclass Members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class and Subclass Members will be fairly and adequately protected by Plaintiff and her counsel.

36. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclass Members. Each individual Class and Subclass

Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
**Violation of Florida's Security of Communications Act**
**Fla. Stat. § 934.01, et seq.**

37. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

38. Plaintiff brings this claim individually and on behalf of the Florida Subclass against Defendant.

39. The Wiretap Statute prohibits (1) the interception or procurement of another to intercept any wire, electronic, or oral communication; (2) the intentional disclosure of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication; and (3) the intentional use of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication. Fla. Stat. §§ 943.03(1)(a)-(c).

40. Any person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use, a wire, electronic, or oral communication in violation of the Act is subject to a civil action for (1) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred. Fla. Stat. §§ 934.10(1)(a)-(d).

41. At all relevant times, through its API Function, Defendant intentionally intercepted, used, and disclosed the electronic communications between Plaintiff and Florida Subclass Members on the one hand, and Website customer service agents—including but not limited to Women's Center West and Option Line customer service agents—on the other hand.

42. Plaintiff and Florida Subclass Members did not provide their prior consent to having their electronic communications intercepted by Defendant.

43. Plaintiff and Florida Subclass Members had a justified expectation under the circumstances that their electronic communications would not be intercepted by Defendant. Plaintiff and Florida Subclass Members reasonably believed these communications would only be accessed by the Website customer service agent with whom they were corresponding, and not by a third party like Five9. Further, in the case of Plaintiff and other users of the pregnancy resource Websites, Plaintiff and Subclass Members were communicating sensitive PII and PHI that a third party like Five9 had no business acquiring.

Because Website owners did not disclose that Five9 acquires the content of communications sent through its API—rather than simply providing a piece of software that Website owners can use but that Five9 has no access to—Plaintiff and Florida Subclass Members were not aware that their electronic communications were being intercepted by Five9. Further, "under Florida law there is no element of subsequent use or disclosure or purpose to commit a criminal or tortious act." Planned *Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 692 (N.D. Cal. 2019), aff'd sub nom. *Planned Parenthood Fed'n of Am., Inc. v. Newman,* 2022 WL 13613963 (9th Cir. 2022). Rather, the interception alone is enough to create liability.

44. The wiretapping of Plaintiff and Florida Subclass Members occurred in Florida, where Plaintiff Yockey and Subclass Members accessed the Website and where Five9's Chat function routed their electronic communications to Five9's own servers.

45. The violation of the Wiretap Statute constitutes an invasion of privacy sufficient to confer Article III standing.

46. Plaintiff and Florida Subclass Members seek all relief available under the Wiretap Statute.

**COUNT II**
**Violation of California Invasion of Privacy Act**
**Cal. Penal Code § 631**

47. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

48. Plaintiff brings this claim against Defendant individually and on behalf of the Class and Subclass.

49. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

50. Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and

common law privacy claims based on Facebook's collection of consumers' Internet browsing history); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.")..

51. Five9's API is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

52. Five9 is a "separate legal entity that offers 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Accordingly, Five9 was a third party to any communication between Plaintiff and Class Members, on the one hand, and Defendant, on the other. *Id.* at 521; *see also Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023).

53. At all relevant times, by using its API, Five9 willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and putative Class and Subclass Members, on the one hand, and the various Websites on the other, while the electronic communications were in transit, or were being sent from or received at any place within California. Specifically, (i) as alleged above, Five9 intercepted each communication on the Websites while the communication was in transit; (ii) separately, each communication by Plaintiff and Florida Subclass Members was sent from Florida and received by Five9 in California; and (iii) each communication by Plaintiff and Nationwide Class was received by Five9 in California.

54. Plaintiff and Class and Subclass Members did not provide their prior consent to Five9's intentional access, interception, reading, learning, recording, and collection of Plaintiff' and Class and Subclass Members' electronic communications. *Javier*, 2022 WL 1744107, at *2 ("[W]e conclude that the California Supreme Court would interpret Section 631(a) to require the prior consent of all parties to a communication.").

55. Because Defendant is headquartered in California, a CIPA § 631 claim can be pursued by all users of any Website nationwide, regardless of where the user resides. *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *6 (S.D. Cal. June 29, 2016) (finding that non-resident plaintiff had statutory standing under CIPA where recordings by California

defendant took place in California); *see also Carrese v. Yes Online Inc.*, 2016 WL 6069198, at *4 (C.D. Cal. Oct. 13, 2016) (same and noting "[c]ourts have declined to read CIPA's legislative intent as a limitation on standing when the statute does not impose any residency requirements"); *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) ("A legislative purpose that articulates an interest in protecting those within California is not inconsistent with also allowing non-Californians to pursue claims against California residents.").

56. The violation of CIPA § 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

57. Plaintiff and Class and Subclass Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

**COUNT III**
**Violation Of The California Invasion of Privacy Act,**
**Cal. Penal Code § 632**

58. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

59. Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class against Defendant.

60. CIPA § 632(a) prohibits and entity from

> intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.

61. Defendant's API is an "electronic amplifying or recording device."

62. At all relevant times, the communications between Plaintiff and Subclass Members, on the one hand, and customer service agents of the Websites, on the other, were confidential.

63. At all relevant times, Five9 intentionally used the API to eavesdrop upon and record the confidential communications of Plaintiff and Subclass Members, on the one hand, and the customer service agents, on the other.

64. When communicating with the website agents, Plaintiff and Class Members had an objectively reasonable expectation of privacy. Plaintiff and Class Members did not reasonably expect that anyone other than Pregnancy Center or Option Line customer service agents would be on the other end of the chat, and that other, third-party entities like Five9, would intentionally use an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and Subclass Members. Indeed, Plaintiff and Class Members each communicated PII and PHI to the customer service agents, which enhances their reasonable expectation of privacy because such secretive communications should not be disclosed to or intercepted by third parties like Five9.

65. Plaintiff and Subclass Members did not consent to any of Five9's actions. Nor have Plaintiff or Subclass Members consented to Five9's intentional use of an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and Subclass Members.

66. Because Defendant is headquartered in California, a CIPA § 632 can be pursued by all users of any Website nationwide, regardless of where the user resides. *Bona Fide Conglomerate, Inc.*, 2016 WL 3543699, at *6; *see also Carrese*, 2016 WL 6069198, at *4; *Valentine*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011).

67. The violation of CIPA § 632(a) constitutes an invasion of privacy sufficient to confer Article III standing.

68. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Subclass Members have been injured by the violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 632(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class and Subclass under Rule 23, naming Plaintiff as the representatives of the Class and Subclass, and naming Plaintiff' attorneys as Class Counsel to represent the Class and Subclass;

(b) For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

(d) For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For injunctive relief as pleaded or as the Court may deem proper; and

(g) For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury of all issues so triable.

Dated: April 12, 2023

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *_/s/ Joel D. Smith_*
Joel D. Smith

Joel D. Smith (State Bar No. 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: jsmith@bursor.com

*Attorneys for Plaintiff*